IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRED KELLY,

            Plaintiff,                    No. 03:14-cv-01020-HZ

     v.

CAROLYN W. COLVIN, Acting           OPINION & ORDER
Commissioner of Social Security,

            Defendant.

Merrill Schneider
SCHNEIDER, KERR & GIBNEY LAW OFFICES
P.O. Box 14490
Portland, Oregon 97293

     Attorney for Plaintiff

Billy J. Williams
ACTING UNITED STATES ATTORNEY
District of Oregon
Ronald K. Silver
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

1 - OPINION & ORDER

Lars J. Nelson
ASSISTANT REGIONAL COUNSEL
Office of the General Counsel - Region VIII
Social Security Administration
1960 Stout St., Ste 4169
Denver, Colorado 80294-4003

      Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Fred Kelly brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on February 3, 2011, alleging an onset date of August 1, 2010. Tr. 17, 197-205. His application was denied initially and on reconsideration. Tr. 84-97, 98-111.

On December 28, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 37-83. On March 1, 2013, the ALJ found Plaintiff not disabled. Tr. 14-36. The Appeals Council denied review. Tr. 1-4.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on L5-S1 disc desiccation, Hepatitis C, rheumatoid arthritis, bipolar disorder, and post-traumatic stress disorder. Tr. 235. At the time of the hearing, he was forty-five years old. Tr. 43. He has a GED. Tr. 45. He has past relevant work experience as a house painter and construction painter. Tr. 30. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his February 3, 2011 application date. Tr. 19. Next, at step two, the ALJ determined that Plaintiff has severe impairments of degenerative disc disease, depressive disorder not otherwise specified, Hepatitis C, osteoarthritis, and alcohol abuse. Tr. 19. However, at step three, the ALJ determined that Plaintiff's impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 20-21.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) except he can lift less than ten pounds frequently. Tr. 21. He can stand and walk for up to six hours in an eight-hour workday. Id. He can sit for at least six hours in an eight-hour workday. Id. He can frequently climb ramps and stairs but he can never climb ladders, ropes, or scaffolds. Id. He can frequently perform balancing, stooping, kneeling, crouching, and crawling. Id. He must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, and gases. Id. He cannot tolerate exposure to heights and dangerous machinery. Id. He can remember and understand simple tasks and instructions consistent with jobs with a specific vocational preparation score of one or

two.  Id.  He can have only brief, superficial interaction with the general public and no ongoing mediation or negotiation.  Id.  He can work near coworkers but cannot engage in teamwork.  Id.  He is limited to simple, work-related decisions with few workplace changes.  Id.  He needs a sit-stand option.  Id.  He can sit for one hour, then needs to stand for a few minutes, and then can return to the other position without stop in production level.  Id.

With this RFC, the ALJ determined that Plaintiff is unable to perform any of his past relevant work.  Tr. 29-30.  However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as small products assembler, bottling line attendant, and marker II.  Tr. 30-31.  Thus, the ALJ determined that Plaintiff is not disabled.  Tr. 31.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

5 - OPINION & ORDER

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends that the ALJ erred by not performing a drug and alcohol addiction (DAA) analysis, by not further developing the record as to listed impairment 12.05C, and by improperly rejecting lay witness testimony.

I.  DAA Analysis

Plaintiff argues that the ALJ erred by failing to conduct a DAA analysis when the ALJ herself determined that alcohol abuse was one of Plaintiff's severe impairments.  The ALJ remarked on the evidence of Plaintiff's alcohol use throughout her decision but the ALJ never addressed what Plaintiff contends is the unresolved issue of the materiality of Plaintiff's alcohol use.

Plaintiff focuses his argument on the ALJ's treatment of the June 2012 evaluation of Plaintiff by Heather Bee, Psy. D.  Tr. 727-41.  Dr. Bee conducted a structured clinical interview, reviewed some prior records, and administered two tests.  Id.  She obtained background information from Plaintiff regarding his family, social, educational, work, medical, substance use, psychiatric, and legal histories.  Tr. 731-34.  She also discussed his activities of daily living and recreation.  Tr. 733-34.

Dr. Bee made several behavioral observations, including that when Plaintiff entered the room for the evaluation, a strong smell of alcohol was present.  Tr. 735.  Plaintiff appeared immediately antsy and impatient, asking repeatedly why the evaluation had to last four hours.  Id.  He took numerous breaks.  Id.  He was dressed casually with marginal grooming.  Id.  He moved with some degree of difficulty.  Id.  He appeared agitated and distracted, although he was fully

oriented. Id. He exhibited poor attention and concentration during the clinical interview and evaluation procedures. Id. He frequently needed to have questions repeated and had difficulty grasping instructions for some tasks on the Wechsler Adult Intelligence Scale (WAIS-IV) test. Id. Even when provided explicit instructions, he appeared confused. Id. His responses to the clinical interview questions were open and honest and to the point. Id. His insight and judgment for the purposes of testing appeared to be minimal due to his distractability, agitation, and low motivation for the procedures. Id.

Additionally, his performance on the WAIS-IV seemed hindered by his level of agitation and distractability and poor effort. Tr. 736. Dr. Bee stated that Plaintiff's performance on the WAIS-IV was invalid. Id. She viewed the scores as a significant underestimate of his true cognitive functioning. Id. Plaintiff's responses to the Personality Assessment Inventory (PAI) appeared to be valid. Id.

On testing, Plaintiff's scores on all of the WAIS-IV Indexes fell within the extremely low range, including his full-scale IQ score of 53. Id. However, Dr. Bee noted again that the scores were invalid and were a significant underestimate of Plaintiff's true abilities. Tr. 737. She noted that Plaintiff was agitated throughout the test administration and had difficulty attending to the instructions and tasks. Thus, she did not further interpret the WAIS-IV scores. Id.

The PAI showed that Plaintiff experiences significant distress with particular concerns about his physical functioning. Id. He has little energy or enthusiasm for concentrating on important life tasks and little hope for improvement in the future. Id. The testing showed a significant depressive experience. Tr. 738.

Dr. Bee's diagnostic impressions included: (1) adjustment disorder with mixed anxiety

and depressed mood, chronic; (2) bipolar disorder not otherwise specified; and (3) polysubstance dependence, in sustained full remission by client report. Tr. 739. She rated his current Global Assessment of Functioning score at 65. Id. In her almost two-page summary and recommendations, Dr. Bee wrote this about Plaintiff's cognitive and intellectual functioning:

> In terms of Fred's current cognitive and intellectual functioning, he displayed overall intellectual functioning in the *Extremely Low* range (Full Scale IQ is 53) with discrete abilities on the Indexes all within the *Extremely Low* range of ability compared to age peers. These scores cannot be interpreted meaningfully and are regarded as invalid due to Fred's agitated presentation throughout the administration of the WAIS-IV. He appeared to be quite anxious and impatient with procedures. While Fred claims that he is sober from substances, a strong smell of alcohol was present when he entered the room. It is possible that alcohol use could have influenced his ability to attend to these procedures. In spite of explaining the purpose and benefits of the evaluation, Fred may not have deemed the evaluation as particularly useful and may not have exerted adequate effort. In summary, his WAIS-IV scores do not match other observational and historical data and his reported functional abilities. If Fred's cognitive abilities were truly in the extremely low range, he would not have been able to understand and comprehend the interview questions or read, comprehend, and respond to the PAI. Indeed, his PAI profile was valid and was more consistent with this reported and observed limitations.

Tr. 739-40. In addition to her narrative report, Dr. Bee also completed a Mental Residual Functional Capacity Assessment and a Rating of Impairment Severity Report. Tr. 727-30.

In her decision, the ALJ summarized Dr. Bee's report and assessments. Tr. 25, 28. The ALJ specifically noted Dr. Bee's opinions that Plaintiff's conditions seriously interfere with his ability to (1) remember locations and work-like procedures; (2) understand, remember, and carry out very short and simple instructions; (3) sustain an ordinary routine without special supervision; (4) interact appropriately with the general public; (5) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (6) respond appropriately to changes in the work setting; and (7) be aware of normal hazards and take appropriate

precautions. Tr. 28. The ALJ also noted Dr. Bee's opinions that Plaintiff lacked the capacity to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule; (4) maintain regular attendance; and (5) be punctual within customary tolerances. Id. Dr. Bee also assessed Plaintiff as having marked deficits in activities of daily living and in concentration, persistence, and pace, as well as a moderate deficit in social functioning. Id.

The ALJ gave Dr. Bee's opinion "some weight" because it was generally consistent with the record. Tr. 28. "Accordingly, the claimant is limited to simple work. He must have the option to stand or stand." Id. But, the ALJ stated that the opinion was "not fully persuasive because Dr. Bee seems to rely on subjective complaints, the truthfulness of which is brought into question by the claimant's lack of credibility." Id. Additionally, the ALJ explained, it appeared that "the claimant could have been affected by alcohol during the examination." Tr. 28-29. The ALJ noted Dr. Bee's observation of the smell of alcohol. Tr. 29. The ALJ also expressly noted that Dr. Bee found Plaintiff's scores on objective tests invalid. Id.

Under the Social Security Act, "[a]n individual shall not be considered disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). If the Commissioner "find[s] that [a claimant is] disabled and [the Commissioner] [has] medical evidence of [the claimant's] drug addiction or alcoholism, [the Commissioner] must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a).

Where the claimant has alcohol or drug addiction issues, the ALJ should first conduct the

required five-step sequential evaluation "without separating out the impact of alcoholism or drug addiction." Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001). If the ALJ determines that the claimant is not disabled, the claimant is not entitled to benefits and no further analysis is necessary. Id. If, considering the impact of the relevant addiction, the ALJ determines that the claimant is disabled, and there is medical evidence of drug or alcohol addiction, then the ALJ should proceed under 20 C.F.R. §§ 404.1535 or 416.935, to determine if the claimant "would still be found disabled if he or she stopped using alcohol or drugs." Id. (internal quotation marks and brackets omitted). Under these regulations, the ALJ first determines which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). Next, the ALJ determines whether the remaining limitations would still be disabling. Id. If so, the claimant's drug or alcohol addiction is not a material factor to the determination of disability. Id.

       Plaintiff argues that the ALJ erred by not engaging in the DAA analysis. Plaintiff contends that because there was evidence of alcohol addiction, the ALJ was obligated to determine if Plaintiff's alcohol use is material to his disability. Plaintiff then argues that the ALJ's error was not harmless. He contends that the harmful nature of the ALJ's error is demonstrated by the ALJ's treatment of Dr. Bee's opinion.

       Plaintiff notes that if Dr. Bee's opinion were fully credited, the marked limitations in various functions and abilities would compel a finding that Plaintiff is disabled as a matter of law under Listing 12.04. According to Plaintiff, under a proper DAA analysis, the ALJ would have determined if alcohol was a material factor with respect to Dr. Bee's findings by first assessing the issue of disability with alcohol use accounted for. Plaintiff argues that if the ALJ accounted

for Plaintiff's alcohol use, the ALJ would have found Plaintiff disabled under this listing.

Plaintiff then contends that under the next part of the DAA analysis, the ALJ would have considered whether Plaintiff was disabled absent evidence of alcohol use. Plaintiff states that the resolution of that issue is unclear because the ALJ simply rejected Dr. Bee's findings without considering whether Plaintiff might have been just as impaired without any alcohol use. Accordingly, Plaintiff argues, the record is unclear that the ALJ's error was inconsequential. Additionally, Plaintiff argues that the ALJ's error was prejudicial because a proper DAA analysis would have required the ALJ to develop the record regarding Plaintiff's intellectual functioning absent the use of alcohol which could have established his disability under Listing 12.05C.

Defendant responds that the ALJ was not required to conduct the DAA analysis because she did not find Plaintiff disabled even considering the effects of his alcohol abuse. Defendant notes that the DAA analysis is required *only* if the ALJ *first* finds the claimant disabled while accounting for the limitations from drug or alcohol addiction. Because, Defendant argues, the ALJ did not find the condition precedent, meaning that Plaintiff was disabled under the five-step inquiry even while considering the effects of alcohol abuse, the ALJ was under no obligation to further consider Plaintiff's limitations absent alcohol abuse.

Defendant further argues that the ALJ provided legally sufficient reasons to reject Plaintiff's credibility and reasonably weighed the medical opinions. Plaintiff does not challenge the ALJ's credibility finding and does not challenge the ALJ's assessment of the medical evidence, other than his arguments about the ALJ's treatment of Dr. Bee's opinions.

The ALJ's references to Plaintiff's history of alcohol use and her citation to the part of Dr. Bee's report in which Dr. Bee suspects Plaintiff may have been under the influence of alcohol

11 - OPINION & ORDER

during the June 2012 evaluation, show that the ALJ was aware of Plaintiff's alcohol use. However, I agree with Defendant that the ALJ's failure to conduct the DAA analysis in this case was not error.

While Plaintiff does not directly challenge the weight the ALJ assigned to Dr. Bee's assessments, his argument that the ALJ's failure to conduct the DAA analysis is not harmless is premised on a contention that the ALJ erred in finding Dr. Bee's opinion "not fully persuasive[.]" Plaintiff contends that the ALJ should have determined whether Plaintiff was as impaired as Dr. Bee found in her assessments in the absence of alcohol. Because the ALJ failed to do that, the ALJ erred in rejecting Dr. Bee's opinion based on the fact that Plaintiff may have been under the influence of alcohol. In other words, the ALJ was wrong to reject Dr. Bee's opinion based on the Plaintiff's possibly being under the influence of alcohol, without considering whether alcohol was material to Dr. Bee's opinion.

The problem with Plaintiff's argument is, as Defendant notes, that the ALJ rejected the full weight of Dr. Bee's opinion for an entirely independent reason: "Dr. Bee seems to rely on subjective complaints, the truthfulness of which is brought into question by the claimant's lack of credibility." Tr. 28. As the ALJ noted, Dr. Bee's report expressly indicates that she relied on Plaintiff's subjective reports in making certain assessments. Id.; see Tr. 729 (in rating Plaintiff's activities of daily living as markedly impaired, Dr. Bee wrote "Fred reports marked difficulty performing ADLs and says that he must stop quickly after starting when he tries"; in rating Plaintiff's social functioning, Dr. Bee wrote "Fred reports some past difficulty working with authority figures in previous jobs"). While Dr. Bee gave additional reasons to support some of her opinions, Plaintiff does not dispute the finding that Dr. Bee relied on Plaintiff's subjective

reports in making her assessments. Importantly, Plaintiff also does not argue that the ALJ's negative credibility finding is not supported in the record.

An ALJ may reject an examining physician's opinion which is based on subjective complaints by a non-credible claimant. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in rejecting medical opinions based on subjective complaints). A medical opinion which is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Here, the ALJ gave limited weight to Dr. Bee's opinions for two reasons, one of which is entirely unrelated to the fact that Plaintiff may have been under the influence of alcohol during the examination. Any error in rejecting Dr. Bee's opinion based on Plaintiff's use of alcohol is harmless because the ALJ rejected Dr. Bee's opinion for an unrelated reason which is supported in the record. E.g., Carmickle v. Comm'r, 533 F.3d 1155, 1162 (9th Cir. 2008) (ALJ's erroneous reason for discounting a medical opinion was harmless error in light of valid reasons cited by the ALJ).

The ALJ properly rejected Dr. Bee's opinion for reasons entirely unrelated to Plaintiff's alcohol use. Then, the ALJ conducted the full five-step sequential analysis based on other evidence in the record, concluding that Plaintiff was not disabled. Thus, under the Social Security Act, the obligation to conduct the DAA analysis was not triggered. The ALJ did not err.
II. Listing 12.05C

Plaintiff alternatively argues that the ALJ erred by failing to consider whether Plaintiff was disabled under Listing 12.05C which addresses intellectual disabilities. Under Listing 12.05, a claimant must have "significantly subaverage general intellectual functioning with deficits in

13 - OPINION & ORDER

adaptive functioning initially manifested during the developmental period; *i.e.* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The requisite level of severity is met by satisfying the requirements of subsections A, B, C, or D. Id. Subsection C, relied on by Plaintiff, requires a showing that Plaintiff had a "valid verbal, performance, or full range IQ of 60 to 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" Id. at § 12.05C.

Plaintiff argues that the evidence in the record required the ALJ to further develop the record to assess whether Listing 12.05C was satisfied, including ordering a consultative examination to ascertain valid IQ scores. Plaintiff contends that the record established a "prima facie" case of intellectual disability but for valid IQ scores. Plaintiff argues that because the ALJ was faced with a plausible 12.05 Listing, and because the record was ambiguous, the ALJ was required to further develop the record.

I disagree. The burden is on the claimant to establish that he or she has an impairment that meets a listed impairment. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). To meet the 12.05C Listing, Plaintiff must demonstrate that he had a valid verbal, performance, or full scale IQ of 60 through 70 before the age of 22. Here, Plaintiff contends that the invalid IQ testing done by Dr. Bee is sufficient to create ambiguity in the record regarding his IQ score and thus, the ALJ was required to send him for a consultative examination.

The Ninth Circuit rejected a similar request to more fully develop the record in Mayes v. Massanari, 276 F.3d 453 (9th Cir. 2001). There, the court noted that while the ALJ has a "duty to develop the record fully and fairly and to ensure that the claimant's interests are considered,

even when the claimant is represented by counsel[,]" the duty to develop the record beyond what the claimant relies on to establish disability is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Id. at 459-60.

In Mayes, the claimant argued that the ALJ erred by not developing the record in regard to her herniated disc. But the evidence she relied on regarding her disc impairment was obtained after the ALJ hearing. She provided no evidence indicating that she had a herniated disc before the hearing. Id. at 459. Although the claimant conceded that the evidence before the ALJ did not establish disability, she nonetheless argued that "had the ALJ developed the record and established her back condition, he would have found her disabled." Id. at 461. The court determined that the record before the ALJ was neither ambiguous nor inadequate. It rejected the claimant's argument because it would have "improperly shift[ed] her own burden [of proving disability] to the ALJ." Id. at 459.

Similarly here, Plaintiff's 12.05C argument acknowledges that there is no valid evidence in the record establishing the required low IQ score. Plaintiff's position, like the claimant's in Mayes, is speculative, meaning that Plaintiff supposes that if the ALJ had developed the record further, the low IQ score would have been established. But, as in Mayes, the record must be ambiguous or inadequate to trigger this duty. While the question in this case is closer than in Mayes because there, the record contained no evidence of the allegedly disabling disc problem and here, the record contains some evidence of impaired intellectual functioning, the record here is not ambiguous or inadequate. Dr. Bee's opinion itself explains that the low full scale IQ score of 53 was invalid because of Plaintiff's "agitated presentation throughout the administration of the WAIS-IV[,]" and its inconsistency with "other observational and historical data and his

15 - OPINION & ORDER

reported functional abilities." Tr. 739-40.  She also recognized the possibility that alcohol use could have affected his test taking ability.  Id.  Additionally, examining psychologist David Birney, Ph.D., performed no testing, his opinion of borderline intellectual functioning was provisional, and his opinion of mild mental retardation was "rule out."  Tr. 531.  He also provided no concrete limitations.

Given the lack of other IQ testing evidence in the record, the ALJ's appropriate disregard of Dr. Bee's IQ testing, and no other evidence establishing the requisite IQ score or an equivalent extremely low intellectual functioning, the record was not ambiguous or inadequate and did not require the ALJ to send Plaintiff for a consultative examination.  See also Strong v. Colvin, No. 03:12-cv-02046-HZ, 2015 WL 5819102, at * 4 (D. Or. Oct. 27, 2013) (where one of two sets of IQ scores would have established IQ score for Listing 12.05C but where ALJ did not err in relying on the other set of scores, ALJ was under no duty to further develop the record by ordering a psychological evaluation; ALJ also did not fail to develop the record when claimant's school records were unavailable at the time state disability examiners reviewed his records), aff'd, 598 F. App'x 520 (9th Cir. 2015).

III.  Lay Witness Testimony

The ALJ discussed the written testimony of Plaintiff's mother Kathleen Kelly, including the mother's observation of pain in Plaintiff's legs and back to the point where he cannot walk but very short distances of one-quarter block.  Tr. 29.  She also indicated that sitting or standing could become painful and that Plaintiff moves around a lot to try and get comfortable.  Id.  She stated that Plaintiff spent a lot of time in bed because he hurts, he cannot sit in the tub because he cannot get back up, he does not drive, and that he gets moody and depressed because of his

physical symptoms.  Id.  Plaintiff's mother further noted that she takes him to the grocery store and sometimes, she has to finish the shopping for him because he starts to hurt.  Id.  He also cannot pick up his daughter.  Id.

The ALJ gave Plaintiff's mother's statement some weight because it was generally consistent with the record.  Id.  The ALJ noted that the statement shows that Plaintiff experiences physical pain and mental symptoms.  Id.  She wrote that Plaintiff's RFC contained appropriate limitations that accounted for these symptoms.  Id.

Plaintiff argues that the ALJ erred because she did not account for all material limitations related by Plaintiff's mother or explain why they were rejected.   He points to his mother's statements regarding his limitations in walking and his inability to sit in a bathtub because he cannot get back up.  He argues that these limitations are inconsistent with the RFC providing that Plaintiff can walk six hours out of an eight-hour day and that he has only mild limitations in activities of daily living.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account."  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses.  Valentine, 574 F.3d at 694.  The ALJ is not required, however, "to discuss every witness's testimony on a individualized, witness-by-witness basis."  Molina, 674 F.3d at 1114.   If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness.  Id.  Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for

17 - OPINION & ORDER

rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. Id. at 1117, 1122.

Plaintiff himself testified that he could walk only a few blocks and needed help bathing. Tr. 49, 62. The ALJ discussed this testimony. Tr. 22. Assuming that the ALJ's failure to expressly reject Plaintiff's mother's testimony regarding his limitations in walking and bathing was error, the error was harmless. Plaintiff does not challenge that the ALJ gave legally sufficient reasons to reject his testimony. If the ALJ had referred to those reasons to reject the mother's testimony, which did not differ significantly from Plaintiff's testimony, the ALJ would have given germane reasons to reject the mother's testimony. Consequently, the error is harmless.

## CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 4 day of June, 2015

Marco A. Hernandez
United States District Judge

18 - OPINION & ORDER